Denio, Ch. J.
The finding of facts by Mr. Justice Bacon must of course be conclusive, as to the existence of the alleged water-course, unless some error was committed in the course of the trial. But the judge refused to give the effect to a certain judgment, and to the award of certain arbitrators, which is claimed for them by the plaintiff. And this raises the only point which we can review upon this appeal. In order to determine the effect of these adjudications, it will be necessary to look into the evidence with some attention. The parties were the owners of adjoining lots, the defendant’s lot lying north of that of the plaintiff The plaintiff formerly owned both lots, but sold the northerly one to the defendant about the year 1850. The shape of the surface of the land showed a slight descent northerly, which would lead the water to flow from the plaintiff’s lot on to and over the defendant’s. The case made by the plaintiff, and proved mainly by his own testimony as a witness, was that many years ago there was a spring on the plaintiff’s land, from "which there issued what the witness called a runlet of water, running through the plaintiff’s lot on to and through the lot after-wards purchased by the . defendant. About eighteen or twenty years before the trial, and about ten years before the defendant purchased his lot, the plaintiff filled up that spring with earth, and then and subsequently levelled the ground by plowing and scraping the earth into it, leaving, however, a depression on the surface to carry off the surface water. ' About two years after the defendant’s purchase .the plaintiff constructed an underground' drain or sewer from the place where the spring had been, running towards the defendant’s lot, having the previous year constructed five small houses near the site of the spring, the foundations and cellars of which were drained by this sewer. The original surface at that place was raised by the plaintiff about two feet by the drawing on of earth, and the bottom of the sewer rested on the original surface. *462 When the defendant purchased his lot this 4j.’ain had been continued about halfway from, its commencement to the defendant’s land, and after the construction of the fences the plaintiff extended it to the defendant’s line. Before this extension, water was discharged from the then lower end of the drain and ran over the surface of the land, which had been somewhat raised by being filled in. After the defendant purchased he drew earth upon his lot, raising the original surface, which was low and marshy, and he constructed a drain or ditch across it for his own benefit, which operated as a further continuation of the plaintiff’s drain, although it was not so low. The plaintiff’s grievance was that the defendant had suffered this drain on his own land to become, from time to time, obstructed and filled up, the alleged effect of which was to flood the cellars of the plaintiff, by means of the water which was thus prevented from freely running off. And the immediate injury for which this action was brought was the obstruction of the defendant’s ditch in the month of May preceding the commencement of the suit, which, as it was claimed, caused the flooding of the cellars of the plaintiff’s houses.
The defendant’s evidence tended to show that there was never any water-course or channel running from the spring except in wet weather, and it was proved that the defendant excavated the ditch on his lot before the plaintiff constructed his drain. The evidence was clear and uncontradicted that there had not been, since the defendant purchased his lot, nor for several years before, any appearance of a spring, or of a water-course, upon the lots or either of them.
The evidence of the adjudications upon which the plaintiff relied was as follows: S. Earnham, who was a justice of the peace of Watertown, testified that the plaintiff sued the defendant by summons before him, on the 27th of August, 1853. That issue was joined in the suit, and /that *463 a trial by jury was had on the first day of December following, when the plaintiff recovered a verdict for $6.00— for which, and the costs, judgment was rendered. The complaint was “for obstructing the passage of water over defendant’s lot on John street, in the village of Watertown, whereby plaintiff sustained damage $10.” The defendant answered, “ denying complaint, and says he has not obstructed or hindered the passage of water over the plain tiff’s land, on John street, in Watertown; and if any obstruction existed it was caused by the plaintiff’s back-house setting over said drain.” The justice testified that the subject of the action*and trial “ was the same subject matter testified to here by the plaintiff.” Tñe following year, 1854, the plaintiff again sued the defendant, before N. Emerson, another justice of the peace, and the complaint was according to his testimony, “ for obstructing a natural watercourse,” on the same premises as in the present suit. The defendant denied the complaint; and then “the whole matter ” was, by the agreement of the parties, referred to three persons, namely: Justices Farnham and Emerson and one Hoyt: who made an award in writing, which was given in evidence, in the 'following words: “The decision is, that Tuttle (the defendant) shall lower the drain six inches from the mouth of Goodale’s (the plaintiff’s) drain fifteen feet northerly, and permanently secure and cover the same, and on a gradual descent from there to his northerly line; and that he shall pay the costs of the said proceeding at the office of Esq. Emerson, and the costs of reference*; and that Tuttle make the repairs during the present week. Dated April 25, 1854.” This was signed by the three arbitrators. The submission was verbal; one of the arbitrators testified that it was “ of what the defendant should do to put an end to the suit before Emerson.” The pertinency and effect of this evidence must be determined by a reference to the point in issue in this suit. The complaint alleges “ that there has flowed, over and.across the premises *464 of the plaintiff and of the defendant, for a period of time whereof the memory of man runneth not to the contrary, a stream of water, formed by á spring or springs, and into which was accustomed to flow the water from the land on either side of said stream.” It then sets out the plaintiff’s right by law to the continued running of the stream “ in its accustomed channel/” of its use to the plaintiff for the purpose of drainage; and the obstructing of said stream by the defendant, “by plowing the earth on each side of it into the bed thereof.” The complaint is met by a general denial. The action was the usual one for obstructing a water-course. The paroi evidence, furnished principally by the plaintiff’s own oath, not only failed to show the existence of such a stream, but showed positively that there was not any such at any time after the parties owned adjoining lots, or for many years before, and the finding of the justice is in accordance with that state of the proof. In fact, if a water-course ever existed there, which I think is doubtful, it had been obliterated and destroyed by the plaintiff himself, long before the defendant owned any land in the vicinity of it. The question then is, whether the judgment of the justice of the peace estops the defendant from asserting and relying upon the facts as they really exist. I think it does not. Mo such claim as the existence of a water-course is referred to in the complaint before the justice. ■ That is simply for obstructing the passage of water over the defendant’s lot. ■ It does not say the water of a stream or water-course. It may have been surface water, or water percolating through the soil under the surface of the earth. It is clear enough, from the evidence, that there was, at times, a flow of water through both these meadows, as there always is in a marshy soil, where the land is situated on a declivity. As there was nothing in the. pleadings, so there was nothing in the evidence, so far as we are made acquainted with it,-touching the existence of a water-course. All that we have on that point is *465 the testimony of the justice, who says that the “subject of the action and trial was the same subject matter testified here by the plaintiff.” Now, the plaintiff did not pretend, in his testimony in the present case, that there was any water-course above ground on his lot in 1853, or for some ten years previous to that time; but he admitted that he himself had obliterated the source and channel of the supposed stream long before. He did, no doubt, claim that the defendant owed him the duty of maintaining a drain on his own lot, so that the superabundant water percolating through the pores of the earth would run off. In other words, he claimed that the defendant should co-operate with him in draining his premises. Whether that claim was well founded or not, is not now the question. Supposing that to have been his claim before the justice, he succeeded in convincing the jury of its validity, which was sufficient for his purpose, at that time. But, the adjudication in favor of that claim has not the slightest tendency to prove the existence of .the alleged water-course at the time the defendant in this action is charged with obstructing it. The complaint in the second justice’s suit, brought in 1854, is more to the purpose. If the justice was accurate in his memory, for the pleading seems to have been oral, the complaint was for obstructing a natural watercourse. It is not quite clear that a stream running above ground was intended, but such may have been the case. But that suit, whatever the issue may have been, was never tried, and it does not appear that the suit and the issue joined in it was submitted to arbitrators. The testimony of Mr. Emerson is that the whole matter by which I should understand the controversy between the parties, respecting the flowing of the plaintiff’s land,- was submitted. The testimony of Mr. Farnham, another of the arbitrators, does not show that the suit, or the issue joined in it, were submitted. The submission, as he understood it, was as to what the defendant should do to put an *466 end to the suit. The counsel showed conclusively that it was not the issue in the suit which was submitted. It directed the defendant to do certain things respecting his drain, and not to pay damages for the alleged obstruction of a water-course, which was the only judgment the plaintiff could have had in the suit. These considerations have convinced me that the defendant' was not estopped in the present action from relying upon the undisputed fact that there was not any such water-course as he was charged with obstructing. Mr. Justice Baqoit was, therefore, right in disallowing the effect claimed for the judgment and award, I am of opinion, moreover, that the plaintiff was not entitled to recover for a supposed wrong of the defendant in not joining with the plaintiff in the laudable effort of reclaiming these wet-grounds. With all the latitude which now obtains upon the subject of variance in pleadings, such a course of action as last suggested could not be considered as embraced in a complaint for obstructing a water-course. It is so wide a departure from any idea we can have of such an action, that we must consider the trial to have presented a failure of proof. Moreover, I do not think that there was any obligation resting on the defendant, so to use his premises adjoining those of the plaintiff, as to prevent the latter from being incommoded by the water existing in the marshy soil of his own lot. We have lately decided that-the principles which apply to the obstruction of running streams do not govern in the case of waters running under the soil. (Ellis v. Duncan, Court of Appeals, March Term, 1864); and see Acton v. Blundell (12 Mees. & Wels. 324); Greenleaf v. Francis (18 Pick. 117.) In these cases it was held that a liability did not attach to the act of one sinking a shaft on his own soil, by which the subterranean waters, which would otherwise have run under the plaintiff’s soil and have been useful to him, were cut off. A fortiori, one is not obliged to excavate ditches or construct sewers on his own land for the purpose' of draining the low or marshy *467 lands of an adjoining proprietor. (And in respect to the running off of surface water caused by rain or snow, If know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soilji for its amelioration and his own advantage, because his neighbor's land is so situated as to be incommoded by it. ¡I Such a doctrine would militate against the well-settled rule that the owner of land has full dominion over the whole space above and below the surface, j The justice’s judgment, and the award, though they may estop the defendant from controverting the facts upon which those determinations proceeded, cannot have the effect of changing settled rules of law. If, for instance, the plaintiff had set up a title by prescription, or by grant, or by any valid contract, to have the defendant maintain a sewer over his lot for the benefit of the plaintiff’s lot, the judgment in his favor in that suit, supposing the court to have had competent jurisdiction, would have established his right for all future time, and the clearest evidence of the non-existence of the supposed title would not have avoided the estoppel; but a recovery upon no title alleged, but which was based wholly upon a misunderstanding of the law, though it would be binding in the particular case, would not estop any right which could be availed of in a subsequent litigation.
I think the order appealed from ought to be reversed, and judgment absolute be rendered in favor of the defendant, according to. the determination of Mr. Justice Bacon.
Ingraham, J.
The finding of the judge on the, trial of this case was that the plaintiff had failed to show that at the time of the defendant’s purchase of the premises where the supposed stream was obstructed, there was any natural "stream or channel of water that had been accustomed to flow over and across the land, or that the plaintiff had a right to discharge the water from- his premises, across the defendant’s premises.
*468 This finding upon a question of fact, in this court, would be conclusive, but not so in the general term of the supreme court. They may reverse a judgment and order a new trial on the ground that the verdict is against the evidence, or against the weight of evidence, or for any mistake as to facts. And where a judgment is reversed without assigning any cause for such reversal, it is difficult to say whether the judgment was so reversed for errors of fact or errors of law.
It is extremely difficult to suppose that the general term reversed this judgment for errors of fact, bic one, from the evidence as given in the case, could suppose the contrary to have been proven. The plaintiff stated that when he bought the land, about 1838, there was a spring on the land, which ran across the land owned by the defendant; that he filled up the spring a year after he bought it; that he built a drain from his house through his garden, and in 1852 continued the drain to the defendant’s line, and drained the cellars of houses he had built, and during this period he had been filling up his own land higher than his neighbor’s. Under such evidence I am at a loss to see how any finding that a natural stream existed there at the time of the sale to the defendant could be sustained. On the contrary, I think the evidence clearly establishes the contrary finding, and that the judge was right on the trial, as to the fact.
Upon the trial the plaintiff relied upon the previous trial before a justice, and upon an arbitration between the parties, which he claimed related to the subject matter of this trial, and was conclusive between them. The judge, at the trial, found that the defendant was not estopped thereby from denying the existence of the water-course, and that the evidence of decisions in those cases was not conclusive f upon the parties in this casé. In this ruling there was no error. The complaint set forth that there had flowed over and across the plaintiff’s premises a stream of water formed *469 by springs, from time immemorial, and had been accustomed to flow so without obstruction; that the plaintiff had drained the water from his cellar into that stream, and that the defendant, in May, 1857, had obstructed the stream by plowing earth into it, and prevented thereby the accustomed flow of the water, and had caused the waters of the stream to overflow the plaintiff’s land. And he asked to have a judgment of the court that he was entitled to have the stream flow across the defendant’s lands unobstructed.
On the trial before Farnham, a justice of the peace, in-1853, the complaint was for obstructing the passage of water over the defendant’s lot. Whether such water came from a spring, or whether it was a right that existed immemorially, or when the obstruction was put there, was not stated. So the matter submitted to arbitration, which was commenced before Emerson, although the complaint was as to a natural water-course, yet after’ the case was submitted to the arbitrators, the decision was made solely as to the drain and its depth and dimensions. ¡Neither of these decisions can be said to establish the existence of a watercourse running over the defendant’s land from time immemo - rial. Certainly, neither of them established that in 1857 the defendant obstructed this drain; or that at the time of that action he maintained any obstruction to the flow of water over the premises. More especially should the defendant be allowed to explain the plaintiff’s evidence, given by himself, on which he relied to establish the existence of such rights; and still more, should he not be concluded by a previous trial in regard to a drain, when the plaintiff himself proved that he had. destroyed such running stream, if it ever existed, by filling it up, more than twenty years previous thereto. If the action had been for obstrupting a drain across the defendant’s premises, from the plaintiffs land, the evidence of the former trials might have been sufficient to establish the plaintiff’s right to maintain the drain, but they would have been evidence of nothing else; *470 but they certainly were not sufficient to conclude the defend- • ant as to the existence of a running stream from the plaintiff’s land over, not through, the defendant’s land, so as to give the plaintiff a right forever to maintain such stream running across the same land.
It appears to me that the decision at the trial was right, and that the order of the general term, granting a new trial, was erroneous. As th^ counsel have not claimed that the order of the general term was not made for any error of fact, we, should not avoid doing justice to the parties by terminating litigation, when satisfied that the cause has b,een rightly decided. The order granting a new trial, if on the ground that the judgment is against the weight of evidence, should show that to be the cause. If it does not, and there appears in the case no reason for supposing the decision was for such a cause, we are justified in concluding that the general term decision was made upon the grounds on which the counsel attempt to sustain it in this court.
The order of the general term should be reversed, and the judgment of the special term affirmed.
All the judges concurred, except- Mullin’, J., who had been counsel in the case, and therefore did not sit.
Judgment reversed.